**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**KEVIN DANIELSON, OSB # 06586**
Assistant United States Attorney
kevin.c.danielson@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
        Attorneys for Defendant United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| SANDRA DELONG,<br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>        Defendant. | Case No. 6:15-cv-01876-JR<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** |

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Counsel for Defendant has conferred by telephone with Plaintiff's counsel, Scott Lucas and Jennifer Middleton. The parties have made a good faith effort to resolve this dispute but have been unable to do so.

## MOTION

Defendant United States, by Billy Williams, United States Attorney for the District of Oregon, through Assistant U.S. Attorney Kevin Danielson, moves for summary

judgment under Fed. R. Civ. P. 56 based on the discretionary function exception under the Federal Tort Claims Act.

## MEMORANDUM

### Summary of the Argument

Plaintiff alleges she was assaulted in her home in 2013 by a U.S. Postal Service employee who was delivering mail at the time. She alleges that because the employee had a history of harassing women on his route, the Postal Service is liable for her injuries because it was negligent in its supervision and retention of the employee.

The employee began working for the Postal Service in 1995. In 2003, the Postal Service issued the employee a written reprimand for unacceptable conduct with females on his route. In 2009, the Postal Service issued a letter of warning to the employee based on his unacceptable conduct with females on his route. The employee had no previous criminal record and no history of sexually assaulting any females on his route.

Congress gave the Postal Service discretion in how to handle employment matters. This authority included the right to hire, promote, transfer, assign, retain, suspend, discipline, and discharge its employees. 39 U.S.C. § 1001(e)(2). The discretionary function exception of the Federal Tort Claims Act protects an agency from claims alleging negligent supervision and negligent retention of an employee. Therefore, this Court lacks subject-matter jurisdiction over Plaintiff's claims.

### Background

1.  Plaintiff Sandra DeLong was allegedly assaulted by Postal Service employee Daniel Gray in her home on August 20, 2013, in Albany, Oregon. ECF 1, ¶ 8. She was 75 years

old at the time. *Id*., ¶ 2.

2. Plaintiff alleges that Mr. Gray pushed his way into her home, grabbed her, tried to kiss her and bite her neck, and grabbed her buttocks. ECF 1, ¶ 8. Plaintiff resisted, pushed him away, shoved him out the door, and called police. *Id*., at ¶ 9. Mr. Gray was arrested on August 20, 2013, on suspicion of Sexual Abuse I and Burglary 1. *Id*., at ¶ 10.

3. Mr. Gray was a letter carrier for the Postal Service and was working at the time of the alleged assault. ECF 1, ¶¶ 3, 8.

4. After a trial, Mr. Gray was convicted of sexual abuse in the first degree and burglary in the first degree. ECF 1, ¶ 12. He was sentenced to 75 months in prison. Declaration of Kevin Danielson, Exhibit 1.

5. Plaintiff alleges that Mr. Gray previously harassed, threatened, or assaulted women on his route and that the Postal Service had knowledge of these prior incidents. ECF 1, ¶ 13.

6. Plaintiff alleges that in 2002, a woman, who worked at a business on Mr. Gray's route, complained to the Postal Service that he made comments to her that made her uncomfortable, stopped by her home when she was not there, and asked her when they were going out. ECF 1, ¶ 13.1. The Postal Service instructed Mr. Gray not to deliver mail to the business where the woman worked. *Id*.

7. Also in 2002, Plaintiff alleges that a female customer on Mr. Gray's route complained to the Postal Service that he had hand-delivered mail to her door instead of using her mailbox, asked the woman to email him, and left a personal note in her mailbox. ECF 1, ¶ 13.2. The Postal Service instructed Mr. Gray not to go to the woman's door in

the future.  *Id.*

8.     In January of 2009, Plaintiff alleges a complaint was made to the Postal Service that Mr. Gray was harassing a female employee who worked at a store on his route and sending her texts that were sexual in nature and included nude photos of himself.  ECF 1, ¶ 13.3.

9.     Plaintiff alleges that, also around January of 2009, a female employee at the same store complained to the Postal Service that Mr. Gray harassed her at the store, called her "hey baby," stopped by her home, and made comments about her uncle and roommate looking at porn sites.  ECF 1, ¶ 13.4.

10.    Plaintiff alleges that, at some point in time, Mr. Gray went to the door of a home on his postal route and pretended to have a package to deliver to the woman.  ECF 1, ¶ 13.5. When the woman opened the door, he allegedly forced his way into the home and tried to kiss her.  Plaintiff alleges, based on her information and belief, this incident was reported to the Postal Service.  *Id.*

11.    Mr. Gray began working for the Postal Service in January of 1995.  Declaration of Mike Norbom, Exhibit 1.

12.    On January 23, 2003, the Postal Service issued Mr. Gray a letter of reprimand for unacceptable conduct based on a complaint from a customer on his route.  The customer alleged that Mr. Gray had frequently gone to her door, that he had given the customer his email address, and that he left a note in her mailbox stating that his feelings were hurt when she did not email him.  Dec. of Norbom, Exhibit 2.

13.    On March 19, 2003, the Postal Service issued Mr. Gray a letter of Official Notice that his behavior was unacceptable based on a complaint from another customer at a

business on his route. The customer alleged that Mr. Gray asked her "when are we going out" and stated "I know where you live." The customer also said he had stopped by her home but she was not there. The customer said Mr. Gray sometimes came to the business even when he had no mail to deliver. The Postal Service put Mr. Gray on official notice that his behavior was not acceptable. Dec. of Norbom, Exhibit 3.

14. On January 27, 2009, the Postal Service issued a 14-day, no-time-off Notice of Suspension to Mr. Gray. The Notice was issued based on two complaints of unacceptable conduct. The first complaint alleged that Mr. Gray engaged in an intimate relationship with a customer on his route, sent her text messages, and loitered in her place of employment. The second complaint alleged that Mr. Gray made inappropriate flirtatious comments with a customer, stopped by her residence, and made other inappropriate comments to her. Dec. of Norbom, Exhibit 4.

15. In June of 2009, in a pre-arbitration settlement, the Notice of Suspension issued on January 27, 2009, was reduced to a Letter of Warning that was to remain in Mr. Gray's file for nine months. Dec. of Norbom, Exhibit 5.

16. Following Mr. Gray's arrest in August of 2013, the Postal Service placed him in off-duty status. Dec. of Norbom, Exhibit 6.

17. On January 17, 2014, the Postal Service indefinitely suspended Mr. Gray. Dec. of Norbom, Exhibit 6.

18. On July 28, 2014, the Postal Service notified Mr. Gray that he was being terminated. Dec. of Norbom. Exhibit 7.

19. Prior to August 20, 2013, Mr. Gray had no criminal record except for traffic

Page 5     Defendant's Motion for Summary Judgment and Memo in Support
            *DeLong v. United States*; No 6:15-cv-01876-JR

violations. Dec. of Kevin Burke, ¶ Exhibit 1.

20. Congress gave the Postal Service the right to "hire, promote, transfer, assign, and retain officers and employees in positions within the Postal Service, and to suspend, demote, discharge, or take other disciplinary action against such officers and employee." 39 U.S.C. § 1001(e)(2). This right is subject to other applicable laws regulations, and collective-bargaining agreements. *Id.*

21. The Postal Service has the power to adopt, amend, and repeal rules and regulations that are necessary to carry out its functions under the law. 39 U.S.C. § 401(2).

22. The Postal Service has adopted regulations that include, among others manuals, the Employee and Labor Relations Manual. 39 C.F.R. § 211.2(a)(2).

23. The Postal Service's Employee and Labor Relations Manual ("ELM") states, in part, as follows:

> Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal employees be honest, reliable, trustworthy, courteous, and of good character and reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain regulations governing the off–duty behavior of postal employees. Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal Service. Conviction for a violation of any criminal statute may be grounds for disciplinary action against an employee, including removal of the employee, in addition to any other penalty imposed pursuant to statute.

ELM § 665.16, Dec. of Danielson, Exhibit 2.

24. The ELM has a section entitled "Postal Service Standards of Conduct" that sets forth the expected behavior of Postal Employees. The ELM states: "Postal officials may

take appropriate disciplinary measures to correct violations of the regulations referred to in 665." ELM, § 665.6, Dec. of Danielson, Exhibit 2.

## Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has properly supported its motion for summary judgment, the non-moving party must produce specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In ruling on a motion for summary judgment, the evidence is viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). A court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## The Federal Tort Claims Act

I. **The Federal Tort Claims Act waives sovereign immunity of the United States for certain torts.**

The Federal Tort Claims Act ("FTCA") waives the sovereign immunity of the United States with respect to certain tort claims for money damages based upon injury or loss of property "caused by the negligent or wrongful act or omission" of a federal employee acting within the scope of his employment. 28 U.S.C. § 1346(b)(1). Under the FTCA, the government cedes its sovereign immunity to the extent that it may be sued "in the same manner and to the same extent as a private individual under

like circumstances . . . ." 28 U.S.C. § 2674.

The liability of the United States under the FTCA is determined "in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  In other words, a court must apply the law of the state where the alleged tort took place.  *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2009).

> II.  **The discretionary function exception to the FTCA limits the waiver of sovereign immunity by the United States.**

The FTCA contains specific exceptions that limit the waiver of sovereign immunity. 28 U.S.C. § 2680.  For example, the discretionary function exception bars any tort claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a). The FTCA's discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808 (1984). The government has the burden of proving the applicability of the discretionary function exception.  *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008).

Under the FTCA, the discretionary function exception shields the United States from liability even if its employee's actions were negligent.  *Varig Airlines*, 467 U.S. at 811.  Negligence is "simply irrelevant to the discretionary function inquiry" because if negligence was allowed to defeat the exception, it "would provide a meager shield indeed

against tort liability." *Kennewick Irrig. Dist. v. United States*, 880 F.2d 1018, 1029 (9th Cir. 1989).

### III. The discretionary function exception must meet a two-part test.

The Supreme Court has a two-part test to determine whether the challenged government action is protected by the discretionary function exception. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). The first part of the test requires that the challenged government conduct must be discretionary and involve an element of choice or judgment. *Chadd v. United States*, 794 F.3d. 1104, 1109 (9th Cir. 2015) (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991). This analysis examines the nature of the challenged conduct rather than the status of the actor. *Chadd*, 794 F.3d, at 1109 (citing *Varig Airlines*, 467 U.S. at 813). If a policy, statute, or regulation requires mandatory and specific action, and there is no discretion, then the first part of the test is not met. *Terbush,* 516 F.3d at 1129. However, when specific action is not prescribed, then an element of judgment or choice is likely involved in the action or decision, and the first part of the test is met. *Id*.

In the second part of the test, if the challenged conduct involves an element of judgment or choice, a court must decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 491 U.S. at 322-23 (quoting *Berkovitz*, 486 U.S. at 536). The discretionary function exception was designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323 (quoting *Varig Airlines*, 467 U.S. at 814). Therefore, the

discretionary functions exception only protects discretionary governmental actions and decisions based on considerations of public policy. *Id*. at 323.

In determining whether the challenged action was grounded in public policy reasons, the focus of the test is "not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. The challenged conduct "need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998). In addition, if an "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

**Argument and Authority**

**The discretionary function exception bars Plaintiff's claim for negligent hiring and negligent retention.**

The Ninth Circuit has consistently held that decisions by a federal agency to hire or retain an employee fall within the discretionary function exception. *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (holding that Plaintiff's claims of negligent employment, supervision, and training of federal agents "fall squarely within the discretionary function exception."); *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function

Page 10     Defendant's Motion for Summary Judgment and Memo in Support
            *DeLong v. United States*; No 6:15-cv-01876-JR

exception to shield."); *Gager v. United States*, 149 F.3d 918, 923 (9th Cir. 1998) ("the discretionary function exception bars the [Plaintiff's] claim against the United States for negligent training and supervision of Postal Service employees.").

More recently, the Ninth Circuit stated: "[T]he decision of whether and how to retain and supervise an employee, as well as whether to warn about his dangerous proclivities, are the type of discretionary judgments that the exclusion was designed to protect. We have held that the hiring, supervision, and training of employees to be discretionary acts." *Doe v. Holy See,* 557 F.3d 1066, 1084 (9th Cir. 2009) (applying case law under the FTCA in interpreting the Foreign Sovereign Immunities Act's discretionary function exclusion).

District courts in the Ninth Circuit have consistently barred negligence claims against a federal agency arising from its employment decisions. *White v. Social Security Admin.*, 111 F. Supp. 3d 1041, 1051 (N.D. Cal. 2015) (holding that Plaintiff's claims of negligent retention and supervision were barred by the discretionary function exception); *McKinley v. United States*, 2015 WL 4663206 at *10 (D. Or. Aug. 5, 2015) (holding that a tort claim for failure to supervise and train employees is barred by the discretionary function exception); *Thompson v. United States*, 2015 WL 1208694 at *11 (D. Haw. March 16, 2015) (holding the discretionary function exception precluded a suit against the government for negligent training and supervision arising out of a sexual assault).

In *West v. United States*, 2016 WL 1576382 (C.D. Cal. April 11, 2016), plaintiffs brought an action against the Postal Service for negligent supervision and retention of a mail carrier after he was convicted of committing a sexual crime in the home of a woman

Page 11	Defendant's Motion for Summary Judgment and Memo in Support
	*DeLong v. United States*; No 6:15-cv-01876-JR

on his route. The employee began working for the Postal Service in 1984. *Id.* at *1. In 1986, he admitted to sexually assaulting his wife. *Id.* In 2009, on two different occasions, customers of the employee complained of his improper sexual conduct such as hugging a female customer and placing his hand on her breast while delivering mail. *Id.* The Postal Service reprimanded the employee but allowed him to continue to deliver mail. *Id.* In 2010, a co-worker reported that he was touching her breast. *Id.* In June of 2012, the employee entered plaintiff's home without permission, exposed himself, and forced her to touch his genitals. *Id.* at *2. Approximately 10 days later, the employee again entered the plaintiff's home, gave her child a hug, and grabbed the child's buttocks. *Id.* The employee then went to the kitchen and kissed plaintiff on the lips. *Id.* The customer then reported the behavior to the Postal Service. *Id.* In November of 2012, criminal charges were filed against the employee. He was convicted of committing a lewd act on a minor and was sentenced to six years in prison. *Id.*

In *West*, the Court found that the Postal Service had discretion in how it supervised and disciplined the employee when it allowed him to return to his mail routes after it was informed of his unacceptable conduct. *Id.* at *4. In addition, the Court found that "decisions related to hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Id.* (quoting *Vickers*, 228 F.3d at 950). Moreover, the Court noted that employment decisions are susceptible to policy considerations. *Id.* (citing *Holy See*, 557 F.3d at 1085). Accordingly, the Court granted the defendant's motion to dismiss based on the discretionary function exception. *Id.*

Page 12        Defendant's Motion for Summary Judgment and Memo in Support
             *DeLong v. United States*; No 6:15-cv-01876-JR

Here, the United States has met its burden to establish that the discretionary function exception applies. The first part of the test is satisfied because Congress gave the Postal Service discretion in employment matters related to the supervision and retention of its employees. 39 U.S.C. § 1001(e)(2). This discretion is so broad that even if a postal employee is convicted of a crime, the Postal Service has discretion in how it treats that employee. Dec. of Danielson, Ex. 2, ELM § 665.16. Moreover, the express language of ELM states that "Postal officials may take appropriate disciplinary measures to correct violations of the regulations" and this language exemplifies the discretion that the Postal Service has in dealing with employee conduct. *Id*., ELM, § 665.6. Therefore, the first part of the discretionary function test is met because the Postal Service had discretion in how it supervised Mr. Gray and whether it retained him as an employee.

The second part of the discretionary function test is also met. This step starts with the fact that Congress gave the Postal Service discretion in making employment decisions. 39 U.S.C. § 1001(e)(2). Based on this authorization by Congress to the Postal Service, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. In addition, the second part of the test is met if the actions are susceptible to policy analysis. *Id*. at 325. The Ninth Circuit has held that "decisions related to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers*, 228 F.3d at 950. Therefore, based on the presumption that employment decisions of the Postal Service are grounded in policy reasons based on 39 U.S.C. § 1001(e)(2), that employment decisions usually involve policy judgment that Congress

intended to shield from tort liability, and that employment decisions by the Postal Service are susceptible to policy analysis, the second part of the discretionary function test is met.

In 2003, the Postal Service disciplined Mr. Gray with a letter of reprimand and official notice that his conduct was not acceptable. In 2009, the Postal Service issued him a letter of warning for his unacceptable conduct with his female customers. There is no statute, regulation, or policy that required the Postal Service to terminate him or supervise him in a specific way based on the events of 2003 or 2009. As authorized by law, those were discretionary decisions made by the Postal Service regarding Mr. Gray's employment. And, prior to August of 2013, Mr. Gray has no prior criminal history that would give the Postal Service notice that he was a physical threat to his customers.

Because both parts of the discretionary function test are met, this Court lacks subject-matter jurisdiction and summary judgment should be granted in favor of Defendant.

**Conclusion**

This Court should grant Defendant's motion for summary judgment.

Dated this 22nd day of April 2016.

    Respectfully submitted,

    BILLY WILLIAMS
    United States Attorney
    District of Oregon

    */s/Kevin Danielson*
    KEVIN DANIELSON
    Assistant U.S. Attorney